**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| MARIO GIBSON | : | Case No. 1:22-cv-773 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | Judge Michael R. Barrett |
| vs. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| LIEUTENANT LUCY YAW, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND**
**REPORT AND RECOMMENDATIONS ON INITIAL REVIEW**

Plaintiff Mario Gibson, proceeding without counsel, filed an action alleging violations of his civil rights. ECF No. 1-1. The matter is currently before the undersigned Magistrate Judge on what the Court construes as Plaintiff's motion for reconsideration of this Court's prior order assessing filing fees (the "Motion for Reconsideration"), ECF No. 6, and to conduct the initial screen required by law. 28 U.S.C. § 1915A(a).

For the reasons stated below, the Court **ORDERS** that the motion for reconsideration be **DENIED**. The Court **RECOMMENDS** the following be **DISMISSED with prejudice:** (1) all requests for relief that Yaw be disciplined; and (2) all claims against Yaw in her official capacity. The Court further **RECOMMENDS** that only the Eighth Amendment conditions of confinement claim against Yaw relating to the conditions of Plaintiff's confinement for the week of September 9, 2022, through September 15, 2022 be allowed to proceed and that all other claims against Yaw in her individual capacity be **DISMISSED without prejudice** for failure to state a claim.

## I.     ORDER ON MOTION FOR RECONSIDERATION

### A.  Background

On December 29, 2022, Plaintiff filed a motion to proceed *in forma pauperis* and without the prepayment of fees (the "IFP Motion") and attached the required affidavit and institutional trust account statements.  ECF No. 1.  On January 6, 2023, the Court granted Plaintiff's IFP Motion (the "IFP Order"), ECF No. 2, after which Plaintiff filed what this Court construed as a motion seeking a waiver or postponement of payment of the initial partial filing fee assessed in the IFP Order (the "Motion for Fee Waiver"), ECF No. 3.  In the Motion for Fee Waiver Plaintiff indicated that he was unable to pay the initial partial filing fee and requested to either proceed without payment indefinitely or postpone the suit until he was able to pay.  *Id*.  The Court denied the Motion for Fee Waiver on January 18, 2023, explaining filing fees cannot be waived under section 804(a)(3) of the Prison Litigation Reform Act of 1995 (the "PLRA"), and instructing Plaintiff to file a formal motion seeking an extension of time to make his initial payment if additional time was needed.  ECF No. 4.

On January 23, 2023, Plaintiff filed what the Court construed as a motion seeking to voluntarily dismiss the Complaint, seeking a refund of all partial filing fees paid, and a waiver of any future fee assessments related to the filing of his Complaint (the "Motion to Dismiss").  ECF No. 5.  The Court denied Plaintiff's Motion to Dismiss on February 1, 2023, again explaining that Plaintiff had the right to dismiss the case voluntarily at this early stage of the proceeding, and refile it at a later date, but that "where a plaintiff subject to the PLRA obtains *in forma pauperis* status, the Court has "no authority to waive his fees under the PLRA" after he brings a civil action or files an appeal.  *Id.* at PageID 42 (citing *Porter v. Dep't of Treasury*, 564 F.3d 176, 180 (3d Cir. 2009) (quoting 28 U.S.C. § 1915(b)(1))).  The Court further instructed Plaintiff that if he were to

voluntarily dismiss his Complaint, and then refile his claims, resulting in a new case being opened, that he would be assessed another filing fee in addition to the one already assessed in this case. *Id.* Ultimately, the Court denied Plaintiff's Motion to Dismiss as the relief sought was not available, reiterating that filing fees would continue to be assessed in this case, and again instructing Plaintiff that if he wished to voluntarily dismiss his Complaint, he would need to file a new motion to voluntarily dismiss in compliance with Rule 41(a) of the Federal Rules of Civil Procedure. *Id.* at PageID 43.

On the same day the Court's Order denying the Motion to Dismiss was entered, Plaintiff filed the instant Motion for Reconsideration, objecting to the Court's January 6 IFP Order granting his IFP Motion.[1] ECF No. 6.

### B. Analysis

Plaintiff argues that his case should not proceed and he should not be liable for any filing fees because when he filed the Complaint and his IFP Motion, he only did so "to see if [he] qualified to proceed without pre-payment," and upon learning of the assessment of an initial partial filing fee and additional monthly partial filing fee payments in the IFP Order, he decided not to immediately proceed with the case, instead informing the Court of his intention to delay adjudication of his Complaint until the filing fee could be paid in full. *Id.* at PageID 38 (referencing his Motion for Fee Waiver). Plaintiff argues that when the IFP Motion was granted, instead of allowing him to decide if he wanted to proceed, he was "forced into a contract" whereby filing fees were deducted from his inmate trust account without his consent.[2] *Id.* Plaintiff submits

---

[1] The Court notes that due to the timing of the entry of the Order denying the Motion to Dismiss and Plaintiff's filing of the Motion for Reconsideration by mail, *see* ECF No. 6-1 (postmarked January 25, 2023), that Plaintiff was unaware of and therefore did not intend to seek reconsideration of the Order denying the Motion to Dismiss.

[2] Plaintiff, however, in seeking to proceed *in forma pauperis*, "authorized the institution of incarceration to forward monthly payments of 20 percent of [his] preceding month's income credited to [his] prison account until [he has] paid

that had the IFP Motion not been granted (or presumably had it been provisionally granted allowing him the choice of proceeding or not as he argues was the proper procedure) he could have chosen not to proceed and thus would not be required to pay filing fees. *Id.* He now seeks a return of all filing fees previously deducted from his trust account as payment towards the instant suit and informs the Court he does not wish to proceed with this suit at this time. *Id.* at PageID 39.

As an initial matter, the Court notes that Plaintiff's Objection to this Court's granting of the IFP Order is more accurately described as a motion for reconsideration brought under Federal Rule of Civil Procedure 59, as Plaintiff, in part, asks the Court to reverse its own order granting his IFP Motion. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (indicating that a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers); *McDowell v. Dynamics Corp. of America,* 931 F.2d 380, 382 (6th Cir.1991) (motions for reconsideration are often treated as Rule 59 motions)). However, to succeed when seeking reconsideration of a prior ruling, a movant must demonstrate a clear error of law, newly discovered evidence, an intervening change in controlling law, or manifest injustice. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

Here, it appears Plaintiff argues the Court misapplied the law based on his mistaken belief that he may provisionally file a complaint and motion to proceed IFP, and then determine if he wishes to proceed with his case based on the Court's determination regarding amounts and timing of filing fee payments. ECF No. 7 at PageID 38. However, Plaintiff supplies no legal authority for this proposition and the Court knows of none. Indeed, as explained in two prior orders, the PLRA does not allow for such a process.

---

the full amount of the filing fee," ECF No. 1 at PageID 4, rendering both his argument that the fees were deducted without his consent and that he was unaware the deduction of fees would occur without merit.

As previously clarified, the Court does not have the authority to waive or indefinitely postpone payment of filing fees after a complaint is filed.  *See* ECF No. 4 at PageID 33; ECF No. 7 at PageID 42.  To further reiterate, "[t]he PLRA makes prisoners responsible for their filing fees the moment a civil action or appeal is filed," and by filing a complaint a prisoner waives any objection to both the fee assessment and withdrawal of funds from his trust account to pay filing fees.  ECF No. 4 at PageID 32–33 (citing *McGore v. Wigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997) (citing *In re Tyler,* 110 F.3d 528, 529–30 (8th Cir. 1997)); *Ballard v. Burrage,* 97 F.3d 382, 383 (10th Cir.1996))).   This Court finds no error or change in controlling law that would require overturning its prior order.

Plaintiff, however, labels the IFP Order granting the IFP Motion and the subsequent collection of filing fees as "extortion," which arguably could fall under the motion for reconsideration standard of manifest injustice.  *See* ECF. No. 7 at PageID 39.  To establish manifest injustice a moving party must "show that there exist[s] a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy."  *United States v. Carney*, No. 3:21-CR-00098, 2022 WL 678648, at *2 (M.D. Tenn. Mar. 4, 2022) (internal citation and quotation omitted) (explaining that both criminal and civil proceedings utilize the same general standard for addressing motions for reconsiderations of a prior order or judgment).

In support of his position, Plaintiff argues that if his trust account balance was zero for the six months preceding the filing of his IFP Motion, based on the formula utilized for determining initial partial filing fees and fee payments when a motion to proceed *in forma pauperis* is approved, the Court would have found he had no funds available and he could have proceeded without payment.  ECF No. 7 at PageID 38.  He submits that only because he received some money from

family during the review period for processing his IFP Motion, was he required to make monthly filing fee payments. *Id.* While Plaintiff's displeasure with the PLRA's fee payment structure is clear, the Court found no authority for Plaintiff's apparent contention that the PLRA fee payment structure is different when the source of funds in a prisoner's trust account is family "gifts." Ultimately Plaintiff has not established a manifest injustice based on the Court's IFP Order as he does not argue that the Court's decision was inequitable or outside of the PLRA's filing fee collection policies.

Because Plaintiff's Motion for Reconsideration seeks the same unavailable relief he sought in his Motion to Dismiss—return of the filing fee paid and waiver of the remainder of the unpaid filing fee assessed upon voluntary dismissal of his complaint—and because he has provided no new law, no new evidence, nor established a manifest injustice to support his request for reconsideration of this Court's prior order, it is hereby **ORDERED** that the Motion for Reconsideration, ECF No. 6, is **DENIED without prejudice** and the case will remain open. The Court again instructs Plaintiff that although he is not entitled to a fee waiver, he may still voluntarily dismiss this action by filing a proper notice or motion under Rule 41(a) if he so chooses. Plaintiff is also notified that to the extent he files an additional motion or motions seeking a waiver, a stay on the collection, or a return of the filing fees in this case, without providing a basis for reconsideration under Fed. R. Civ. P. 59, the motion(s) will summarily be dismissed.

## II.    REPORT AND RECOMMENDATIONS UPON INITIAL REVIEW

### A.  Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is also incarcerated, the Court is required to conduct an initial screen of his Complaint. 28 U.S.C. §§ 1915(e)(2), 1915A(a), (b). The Court must dismiss

6

the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A complaint is frivolous if the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or 'wholly incredible.'" *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional," *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010), or "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429-30 (6th Cir. 2009) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint that consists of mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

7

In the interest of justice, this Court is required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f)). Even with such a liberal construction, however, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## B. Background

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, naming correctional officer Lieutenant Lucy Yaw ("Yaw") as the sole defendant.[3] ECF No. 1-1. The Complaint details a series of events occurring while Plaintiff was incarcerated at Madison Correctional Institution ("MaCI") from August 20, 2022, through his transfer to Ross Correctional on September 20, 2022, alleging Yaw repeatedly "violated many of [his] ORC Rights as a TPU Restrictive Housing Inmate." *Id.* at PageID 11.

Specifically, Plaintiff alleges on August 20, 2022, he had a "family emergency" after learning his son was shot and was hospitalized. *Id.* at PageID 11. The following day Plaintiff was

---

[3] In the body of the Complaint, Plaintiff describes actions by several officers that he identifies by name and/or title but has not named as defendants. ECF No. 1-1 at PageID 11–18 (naming Bretz, Holten, Raypool, Sheetz, Bennett, Birming, Erickson, the MaCI "Warden," and the MaCI Correctional Inspector, and listing individual officers Plaintiff alleges "knew" of Yaw's alleged violations). Because these individuals are not named as defendants and are not parties to this case, the Court declines to analyze Plaintiffs statements with respect to these non-defendants and **RECOMMENDS** that any purported claims with respect to them be **DISMISSED**. *See Chapple v. Franklin Cnty.*, No. 2:21-CV-5086, 2022 WL 856815, at *16 (S.D. Ohio Mar. 23, 2022), *report and recommendation adopted as modified sub nom. Chapple v. Franklin Cnty. Sheriff's Officers FCCC 1 & 2,* No. 2:21-CV-05086, 2022 WL 16734656 (S.D. Ohio Nov. 7, 2022).

placed in "TPU"[4] for investigation of a "rule violation." *Id.*  From August 23 through September 2, 2022, he made daily verbal requests[5] to use the telephone to check up on his son, to contact his criminal appellate counsel, and for access to his "legal documents"[6] relating to his criminal appeal and a "civil suit" where he is proceeding pro se. *Id.* at PageID 11–12.  Plaintiff also sent paper "kite" requests[7] to Yaw seeking telephone access to check on his son's status and his appellate counsel and his legal documents, which were repeatedly denied or ignored.  *Id.* at PageID 11–13.

From September 2 through September 8, 2022, Plaintiff continued making verbal and kite requests[8] to call his son, his appellate counsel, and to obtain access to his legal documents, all of which were ignored by Yaw.  *Id.* at PageID 13.  During that time, Plaintiff alleges he attempted to access a "kiosk" to send a kite to inform the warden of his grievances regarding Yaw, which first were declined, and then when he was allowed to access the kiosk it was "off line." *Id.*  From September 6, through September 8, 2022, once the kiosk was available, he sent three "kites" to the MaCI "warden" (presumably to complain of his lack of access to a telephone, his appellate counsel, and his legal documents) which were not returned.  *Id.*

On September 8, 2022, Plaintiff alleges he was "frustrated but not mentally stable" (but "not suicidal or homicidal") and "boarded up" his cell to protest being ignored by Yaw and to gain

---

[4]"TPU" is defined as a "Transitional Programming Unit" serving as "restrictive housing" at MaCI.  *See* Adams, Charlie, CIIC, MADISON CORRECTIONAL INSTITUTION (2017), at 41–42, https://www.ciic.state.oh.us/assets/reports/231.pdf (last accessed April 2, 2023).

[5] It is unclear if Plaintiff made verbal requests to "daily institutional workers who made rounds thought TPU" or Yaw directly.  *See* ECF No. 1-1 at PageID 11–12.

[6] Plaintiff also does not indicate if his legal documents were taken from him when he was placed in TPU or at some other time.  *See Id.* at 11–17.

[7] "The kite system is used within the institution to facilitate communications between inmates and prison personnel." *See State ex rel. Chasteen v. Ohio Dep't of Rehab. & Corr.*, 2014-Ohio-1848, 2014 WL 1778183, ¶ 2, n. 1 (10th Dist.) (discussing the use of "kites" as MaCI).

[8] Plaintiff does not indicate who these verbal requests were made to.  Plaintiff submits Yaw instructed her TPU officers "that they can only give TPU inmates paper kites to her for request towards her."  ECF No. 1-1 at PageID 12–13.  The Court construes this statement as meaning all requests were to be forwarded to, and addressed, only by Yaw.

the attention of a higher ranking official, which resulted in Yaw coming to his cell, handcuffing him tightly, and placing him in a "cool off block." *Id.* at PageID 13–14. Plaintiff alleges he asked to have the handcuffs loosened but was told they would not be loosened until he gave Yaw his "paperwork"[9] and submitted to "property restriction." *Id.* at PageID 14. Upon compliance Plaintiff alleges he was placed in a "suicide gown" without underclothes and returned to his cell which contained only a mattress but had no clothing or personal hygiene items, no toilet paper, or towels. *Id.* Plaintiff asserts he asked "numerous times for medical to check marks on [his] wrist from handcuffs" but his requests were denied. *Id.* Plaintiff alleges that Yaw and fellow officer Bretz "lied,"[10] indicating Plaintiff "refused to attend [his] own hearing."[11] *Id.* at PageID 15.

Later that day when the "2nd shift" came to work and Lieutenant Holten was on duty, Plaintiff continued his protest, again boarded up his cell. *Id.* at PageID 14. When he refused to comply with commands or talk to responding officers, Nurse Raypool authorized the use of mace to force his compliance, which "burned [his] skin, penis, testic[les] made [him] use the restroom on [himself]" and embarrassed him.[12] *Id.* at PageID 14–15. Plaintiff alleges he was then placed in a "dry cell" for 24 hours without a restroom, forcing him to relieve himself on the floor until he was given a urinal the morning of September 9, 2022, before he was released from the dry cell later that day to his cell in TPU, which still "reeked" of mace fumes. *Id.* at PageID 15. Plaintiff

---

[9] Plaintiff alleges he had possession of some paperwork at the time. *Id.* at 14. The Court presumes the paperwork he had are not the legal documents he had been trying to obtain in the weeks prior.

[10] Plaintiff does not indicate in the Complaint who Bretz and Yaw allegedly lied to. *See Id.* at PageID 15.

[11] For purposes of clarity and brevity, the Court shall hereinafter refer to Plaintiff's first allegation of boarding up his cell, being handcuffed and placed in the cool off block and then later returned to his cell by Yaw, as the "First Incident."

[12] Plaintiff alleges "Officer Bretz" was also present and recorded the mace incident on a cell phone. *Id.* at PageID 15.

alleges he attempted to take a shower to rinse the mace off his skin from the day before, but showering caused his skin to burn "worse" than it already was.[13] *Id.*

From September 9, 2022, through September 15, 2022, Plaintiff alleges he was forced to remain in his cell sleeping "on [the] floor or metal bunk bed in the freez[ing] cold with no matt[ress]-hygiene - Tooth brush – Tooth Paste – clothes – Sheets – blanket – Toilet Paper nothing but a suicide gown an[d] blanket with mace residue on it." *Id.* On September 12, 2022, Plaintiff participated in a call with his appellate counsel that took place in Yaw's office where Yaw and her bailiff "Bennett" was present. *Id.* at PageID 15–16. During the call Yaw indicated his legal documents were "on the floor with the rest of [his] property" and that he would have access to it once he was off property restriction. *Id.* at PageID 16.

On September 15, 2022, Plaintiff alleges he was released from property restriction but still did not obtain access to his legal documents, submitting they were in Yaw's office. *Id.* On September 16, 2022, Plaintiff alleges he had another call with his appellate counsel where Yaw indicated she would give Plaintiff the legal documents he needed. *Id.* After the call he returned to his cell, and asked officer "Sheets" if he could obtain his legal documents and use the telephone to call to check on his son but his requests were denied by Yaw. *Id.* When the second shift came on that day, Plaintiff submits he asked officer "Jewell" to ask Yaw for his legal paperwork. *Id.* Officer Jewell responded that Plaintiff's "sergeant" would get the papers for him, and that his "cash slip" for his mail to the MaCI Correctional Inspector was completed. *Id.* Plaintiff alleges that he submitted "copies of [the] kite request to file [a] grievance" by mail to the MaCI

---

[13] For purposes of clarity and brevity, the Court shall hereinafter refer to Plaintiff's second allegation of boarding up his cell, his being maced and held in the dry cell for 24 hours, as the "Second Incident."

Correctional Inspector but that the Correctional Inspector "neglected his duties" and never responded to any of his "issues." *Id.*

On September 17, 2022, Plaintiff alleges that Yaw still refused to give him any of his "legal mail," he was unable to use the phone to check on his son,[14] he was unable to contact his appellate counsel, and that officers Birming and Erickson "denied [his] written request of [his] rights. *Id.* at 17.

On September 20, 2022, Plaintiff was transferred from MaCI to Ross Correctional, after which he received his property, legal documents, envelopes, and personal written music but that "property receipts" were missing from his legal documents. *Id.*

The Court liberally construes Gibson's claims against Yaw as follows:

1.      General prison policy violations including denial of access to a telephone for a personal family emergency and failure to follow prison grievance policy.[15]

2.      Due Process: (a) taking legal papers and personal property, (b) administrative segregation.

3.      Right to Counsel: denial of call with counsel.

4.      Access to Courts: (a) denial of access to legal paperwork, (b) denial of call/conference with counsel.

5.      Cruel and Unusual Punishment: (a) deliberate indifference to medical needs, (b) lack of sanitary conditions and personal hygiene needs, (c) use of excessive force, (d) administrative segregation.

---

[14] Plaintiff alleges that he was unable to use the phone because his "phone pin" was not working and that Yaw restricted his phone pin but denied she had done so. *Id.* at 17.

[15] The Court notes that Plaintiff does not indicate which claims he alleges were policy violations and which were protected rights. As such, any claims that potentially implicated a federally protected right are not individually listed in the general prison policy violation category here.

Plaintiff seeks the following relief: (1) to "hold [ ] Yaw accountable" for various rule violations; (2) compensatory and punitive damages for his "mental state"; and (3) attorney fees and costs. *Id.* at PAGEID 19.

### C.  Recommendations Based on Initial Review of Plaintiff's Complaint

Before discussing the substance of the Complaint, the Court considers the capacity in which claims against Yaw are made as Plaintiff does not state whether he seeks to sue Yaw in her individual capacity, official capacity, or both. *See* ECF No. 1-1 at PAGEID 1 (simply naming Lieutenant Lucy Yaw of "M.C.I." as the sole defendant).

"When a plaintiff 'fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether' the official has notice." *Vittetoe v. Blount Cnty., Tennessee*, 861 F. App'x 843, 851 (6th Cir. 2021) (quoting *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001)).  Generally, in the Sixth Circuit, where a plaintiff does not indicate whether a government official is sued in his or her individual or official capacity, only "absent *any* indication that these defendants are being sued individually, we must assume that they are being sued in their official capacities." *Moore*, 272 F.3d at 772 (emphasis in original) (internal citation and quotation omitted).

The test for determining if a defendant is on notice they are being sued individually is the course-of-the-proceedings test which "considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Vittetoe*, 861 F. App'x at 851 (citing *Moore*, 272 F.3d at 772 n.1).  Where a complaint does not use the official title of a government official, contained language indicating the official was acting for themselves, and requested

damages from each defendant, the Sixth Circuit has found an official was on notice they were being sued in their individual capacity despite a plaintiff's failure to plead individual capacity. *Moore*, 272 F.3d at 773.

Here, no answer to the Complaint has been filed, therefore this Court is limited to a review of the Complaint. In the Complaint, Plaintiff requests compensatory and punitive damages from Yaw, utilizes Yaw's official title of Lieutenant both in the caption and throughout the Complaint, and does not use specific language indicating Yaw was "acting for herself" or otherwise acting as an individual. As it is arguable whether Plaintiff intended to sue Yaw in her individual capacity, for the purpose of this initial review, the Court shall review the Complaint as if Plaintiff intended to sue Yaw in both her individual and official capacities.

### 1. Official Capacity Claims

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). It follows that, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity" and is therefore no different from a suit against the state itself. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). As Yaw is employed by the state of Ohio,[16] any claims against Yaw in her official capacity would be construed as claims against the State of Ohio.

---

[16] MaCI is part of the Ohio Department of Rehabilitation and Correction's network of facilities. *See* Ohio Department of Rehabilitation and Correction, *Facilities*, available at: https://drc.ohio.gov/about/facilities (last accessed Apr. 2, 2023).

Where "state officials are being sued for money damages in their official capacity, the Eleventh Amendment is squarely in play as a bar to suit in federal court, at least to the extent that [p]laintiffs are bringing claims under 42 U.S.C. § 1983." *Lee Testing & Eng'g, Inc. v. Ohio Dep't of Transp.,* 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012). Accordingly, to the extent Plaintiff sues Yaw in her official capacity and seeks money damages, this Court **RECOMMENDS** all claims against Yaw *in her official capacity* be **DISMISSED with prejudice** for want of federal jurisdiction as:

> It is well settled that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *See generally Quern v. Jordan,* 440 U.S. 332 (1979). And the State of Ohio has not waived its immunity from suits for money damages, except to the extent that such claims are allowed to be brought in the Court of Claims of Ohio. *See* R.C. 2743.03. Ohio has not waived its Eleventh Amendment immunity from suits for money damages in federal court. *See Turker v. Ohio Dept. of Rehab. and Corrections,* 157 F.3d 453, 457 (6th Cir.1998).

*Id.* at 725–26; *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985) (punitive damages are not available in an official capacity claim).

Plaintiff also seeks injunctive relief in the form of discipline. *See* ECF No. 1-1 at PageID 17. The Court has no authority to discipline prison officials in a § 1983 action regardless of the capacity a state official is sued under and therefore has no authority to grant such relief as requested by Plaintiff here. *See Keeling v. Grayson Cnty. Det. Ctr.*, No. 4:22-CV-P148-JHM, 2023 WL 2482221, at *4 (W.D. Ky. Mar. 13, 2023) (collecting cases). Accordingly, this Court **RECOMMENDS** any claim seeking disciplinary proceedings against Yaw in any capacity be **DISMISSED with prejudice.**

### 2. Individual Capacity Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must: (1) allege a violation of a federal constitutional right or federal law; and (2) must show that the deprivation was committed by a

person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In addition to alleging a violation of federal constitutional or statutory law by a person acting under color of law, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the alleged injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, a claim may proceed under § 1983 only if there is a federal right at issue. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). To the extent Plaintiff alleges any of his claims against Yaw are policy violations, he must establish these denials involved rights protected under the United States Constitution or federal law to proceed here.

As such, the Court will first identify any protected right allegedly infringed in each claim, and then, if a protected right is at issue, determine if a viable claim has been stated allowing Plaintiff to proceed on that claim.

### a. No Federally Protected Right

#### i. Prison policy generally

Plaintiff alleges that Yaw's behavior violated "ORC AR's An[d] Policy OAC's," and "violated many of [his] ORC Policy Rights as a TPU Restrictive Housing Inmate." ECF No. 1-1 at PageID 11, 17.

As an initial matter, conclusory claims unsupported by specific facts are insufficient to state a plausible claim for relief. *See High v. Silverdal Core Civic of Am.*, No. 1:19-CV-00214, 2019 WL 4723803, at *1 (E.D. Tenn. Sept. 26, 2019) (citing *Iqbal*, 556 U.S. at 681). Plaintiff's

conclusions, without identifying a federal right supporting his § 1983 claims and naming any specific prison policies Yaw allegedly violated, is not enough. *See* ECF No. 1-1.

Moreover, an alleged failure to comply with an administrative rule or prison policy does not itself give rise to a § 1983 claim. *See Laney v. Farley,* 501 F.3d 577, 581 n. 2 (6th Cir. 2007) ("[A] § 1983 claim may not be based upon a violation of state procedure that does not violate federal law."); *Smith v. Freland,* 954 F.2d 343, 347–48 (6th Cir.1992); *Barber v. City of Salem,* 953 F.2d 232, 240 (6th Cir.1992); *McVeigh v. Bartlett,* No. 94–23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (policy directive does not create a protectable liberty interest). Thus, even if Plaintiff had named any policies at issue, he cannot state a claim under § 1983 simply by alleging Yaw violated MaCI policies.

Accordingly, this Court **RECOMMENDS** all general claims against Yaw for failure to follow prison policy be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted**.**

### ii. Telephone access for personal use

Plaintiff alleged that Yaw refused him use of the telephone to address a personal emergency. ECF No. 1-1 at PageID 11–13, 17. There is no free-standing constitutionally protected right to routine use of a telephone while imprisoned as "[a p]laintiff's access to a telephone at his prison unit is a privilege, and privileges have no constitutional protection." *Emmett v. Ebner*, No. CIV A. H10-3611, 2010 WL 3941899, at *2 (S.D. Tex. Oct. 7, 2010) (citing *Overton v. Bazzetta*, 539 U.S. 126 (2003)).

As Plaintiff has no constitutionally protected rights in personal telephone use, this Court **RECOMMENDS** all claims that Yaw violated state law and/or prison policy by denying him

access to a telephone to check on his son be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted**.**

iii.   <u>Prison grievance procedure</u>

Plaintiff alleges Yaw failed to respond or otherwise address various kites and verbal requests and restricted him from using the "kiosk" which, when some of his requests were made, was not functioning properly.  ECF No. 1-1 at PageID 7, 11, 13.  There is "no constitutional right to an effective, fair, or properly functioning prison grievance procedure, and a prison inmate does not have a constitutionally protected interest in prison grievance procedures."  *Young v. Hodge*, No. 3:12-0009, 2012 WL 5494892, at *7 (M.D. Tenn. Nov. 13, 2012), *report and recommendation adopted*, No. 3:12-CV-0009, 2013 WL 440964 (M.D. Tenn. Feb. 5, 2013) (citing *Walker v. Mich. Dep't of Corr.,* 128 Fed. Appx. 441 (6th Cir. 2005); *Miller v. Haines*, 156 F.3d 1231, 1998 WL 476247 (6th Cir. Aug.3, 1998); *Spencer v. Moore,* 638 F. Supp. 315 (E.D. Mo. 1986); *Azeez v. DeRobertis,* 568 F. Supp. 8 (N.D. Ill. 1982)).

As Plaintiff has no constitutionally protected interest in MaCI's grievance procedure, this Court **RECOMMENDS** all claims against Yaw relating to Yaw's failure to respond to his requests made via the kite system, the prison kiosk, or any other claims regarding the functioning of the MaCI grievance procedure be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted**.**

**b.  *Procedural Due Process***

The Court construes Plaintiff's allegations that Yaw deprived him of his legal documents and other personal property, and deprived him of his personal liberty via administrative segregation, *see* ECF No. 1-1 at 11–14, 17, as potentially implicating his right to Due Process under the Fourteenth Amendment.

18

> Procedural due process claims are concerned not with the deprivation of a
> constitutionally protected interest in 'life, liberty, or property,' but deprivation of
> those interests without due process of law. When reviewing a procedural due
> process claim, [a court] must determine whether a protected liberty or property right
> is at stake and, if so, what process is due.

*Handy-Clay v. City of Memphis, Tenn.,* 695 F.3d 531, 546 (6th Cir. 2012) (internal citations

omitted).   To state claim for a due process violation, Plaintiff must demonstrate three elements:

(1) he had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth

Amendment; (2) that Defendant deprived him of this protected interest; and (3) that Defendant did

not afford him adequate procedural rights before depriving him of this protected interest.

*Wedgewood Ltd. P'ship I v. Twp. Of Liberty, Ohio*, 610 F.3d 340, 349–50 (6th Cir. 2010).  While

a plaintiff may establish that he was deprived of a liberty or property interest because of either an

established state procedure or pursuant to a random and unauthorized act, he must also establish

that available state remedies would not adequately compensate it for the loss suffered.  *Id.* (citation

and internal quotations omitted).

### i.  Legal documents and other personal property

Plaintiff's allegations that Yaw violated prison policy by denying him access to his legal

documents and other personal property, *see* ECF No. 1-1 at 11–14, 17, address property interests

potentially protected by the due process clause of the Fourteenth Amendment.  *See Badger v.*

*Chapman*, No. 16-2886-STA-EGB, 2018 WL 5777504, at *7 (W.D. Tenn. Nov. 2, 2018) (denial

of access to legal documents implicates the Due Process clause of the Fourteenth Amendment).

While prisoners have protected property rights, *see id.*, where adequate remedies are

provided by state law, the negligent or intentional loss or destruction of a prisoner's personal

property does not state a claim cognizable under the Due Process Clause.  *Hudson v. Palmer*, 468

U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds*,

*Daniels v. Williams*, 474 U.S. 327 (1986); *see also Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (holding that deprivation of a prisoner's property, be it negligent or intentional, "does not violate due process if adequate state remedies are available to redress the wrong."). As explained by Justice O'Conner in her concurrence in *Palmer*,

> [A] mere allegation of property deprivation does not by itself state a constitutional claim under either [the Due Process or Takings] Clause. The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings. The due process requirement means that Government must provide to the inmate the remedies it promised would be available. Concomitantly, the just compensation requirement means that the remedies made available must adequately compensate for any takings that have occurred. Thus, in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate. When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Violett v. Dowden*, No. 3:17CV-P531-TBR, 2017 WL 5892211, at *8 (W.D. Ky. Nov. 29, 2017) (citing *Palmer*, 438 U.S. at 539).

Therefore, as Plaintiff's access to his personal property including his legal papers was restricted for at most several weeks, as all of it was returned to him with exception to several property receipts, and as he failed to allege what process or remedies he was due or attempted to use, any due process claim relating to his legal documents and any other property mentioned in his Complaint should fail.

This Court therefore **RECOMMENDS** all claims against Yaw for violation of Plaintiff's right to due process by temporarily denying him access to his legal documents and other personal property be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted.

ii.  Administrative segregation

The Court also construes Plaintiff's allegations that Yaw violated prison policy by placing him in segregated confinement following the First Incident,[17] *see* ECF No. 1-1 at PageID 14–17, as implicating liberty interests potentially protected by the due process clause of the Fourteenth Amendment.  *See Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008) ("inmate still retains a 'liberty' interest, guarded by due process, with respect to state-imposed prison discipline") (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).

The due process clause, "does not protect every administrative slight that occurs behind prison walls."  *Harbin-Bey*, 524 F.3d at 791.  Therefore, "[a] prison disciplinary action does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Trawick v. Kelly*, No. 4:12 CV 1714, 2012 WL 5400007, at *3 (N.D. Ohio Nov. 5, 2012) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  "This is so because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  *Badger*, 2018 WL 5777504, at *8 (quoting *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008) (quoting *Sandin*, 515 U.S. at 485)).  The Sixth Circuit has held that a number of common incidents of prison life do not raise due process concerns.  *Id.* (collecting cases) (citing *Grinter*, 532 F.3d at 574 (the use of four-point restraints without the presence of a nurse); *Bazzetta v. McGinnis*, 430 F.3d 795, 802–03 (6th Cir. 2005) (banning visitors); *Harbin-Bey*, 420 F.3d at 577 (designating prisoner a threat to others); *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (increased security classification); *Rimmer-Bey v. Brown*, 62 F.3d 789,

---

[17] For the reasons set forth *infra*, when discussing the details of Plaintiff's excessive force claim against Yaw in Section II.C.2.e.iii., the Court shall not address the events of the Second Incident as Plaintiff fails to allege Yaw's involvement in it or culpability for it.

791 (6th Cir. 1995) (assigning an inmate serving a life sentence to segregation without a reclassification hearing)).  State prison officials are entitled to generous leeway in operating prisons, and courts should accede to their expertise unless deprivations of constitutional rights force judicial intervention.  *See generally Bell v. Wolfish,* 441 U.S. 520, 547–48 (1979); *United States v. Michigan,* 940 F.2d 143 (6th Cir. 1991).

To the extent Plaintiff seeks to argue Yaw placed him under administrative segregation in violation of his right to due process, he must show that this segregation imposed "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." *DeKoven v. Dyke*, 107 F.3d 11 (6th Cir. 1997) (citing *Sandin,* 515 U.S. at 484).  Plaintiff makes no such allegations, instead admitting he was placed in a cool off block for a few hours because he boarded up his cell and refused to comply with prison staff, and only complaining of wrist pain resulting from handcuffs that he submits were too tight.  ECF No. 1-1 at PageID 13–14.  There is simply no basis for this Court to determine the segregation imposed was either atypical or otherwise placed a significant hardship on Plaintiff implicating that a due process violation occurred.

This Court therefore **RECOMMENDS** all claims against Yaw for violation of Plaintiff's right to due process for segregating him to the cool off block be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted**.**

### c.  Access to Courts

Plaintiff alleges Yaw denied him access to his legal documents relating to his criminal appeal in an ongoing civil matter and denied him access to his counsel to discuss his criminal appeal, ECF No. 1-1 at PageID 11–14, 17, which this Court construes as a denial of access to courts claim.

Prisoners and pro-se litigants have a constitutional right to access to the courts.  *Bounds v. Smith*, 430 U.S. 817 (1977); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985); *Patterson v. Mintzes*, 717 F.2d 284, 288 (6th Cir. 1983) (prisoners have the right to access the courts for the purpose of presenting their complaints) (quoting *Cruz v. Beto*, 405 U.S. 319, 321 (1972), quoting, *Johnson v. Avery*, 393 U.S. 483, 485 (1969))).  Convenience to access, however, is not the same as "access," with only access being constitutionally provided for.  *Walker*, 771 F.2d at 932.

The elements of a viable access-to-courts claim in the Sixth Circuit are: (1) "a non-frivolous underlying claim"; (2) "obstructive actions by state actors"; (3) "'substantial[ ] prejudice' to the underlying claim that cannot be remedied by the state court"; and (4) "a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (internal citations omitted).  Moreover, to state a viable claim for interference with access to the courts, a plaintiff must show actual injury. *Lewis v. Casey,* 518 U.S. 343 (1996).

No actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356; *Harbin-Bey,* 420 F.3d at 578 ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline.").  In other words, a "lack of meaningful access to the courts claim must be established by alleging actual prejudice from the deprivation at issue." *Violett*, 2017 WL 5892211, at *7.

Here, Plaintiff alleges that he made continuous oral and written requests for access to his legal papers involving both his criminal appeal and an unspecified civil matter, and to speak with his counsel telephonically regarding his ongoing criminal appeal.  ECF No. 1-1 at PageID 11–17. While receipt of materials of a legal nature which "have impact upon or import with respect to that

prisoner's legal rights and/or matters" have been found to be "a basic right recognized and afforded protection by the courts," s*ee Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996), Plaintiff falls well short of establishing any access to courts claim.

First, Plaintiff does not allege any specific facts regarding the nature of the information contained in his legal documents or the nature of his meeting with appellate counsel which would establish the alleged deprivations had an impact on his legal rights or legal matters. Moreover, while he does imply that Yaw's deprivations caused him to miss a court proceeding, *see* ECF No. 1-1 at PageID 15 (alleging Yaw "lied, along with 2nd Shift officer Bretz about [Plaintiff] refusing [his] presence to attend [his] own hearing"),[18] he does not allege the denial of access resulted in any nonfrivolous claim being lost, rejected, or that he suffered any prejudice as a result. Further, Plaintiff admits that after several days of being refused access to his counsel, on September 12, 2022, he had a call with counsel, i*d.* at 15–16, and his legal papers were returned to him on September 20, 2022, when he was transferred to a different facility, *see id*. at 17, without any allegations of harm resulting from these temporary deprivations.

As such, this Court **RECOMMENDS** that all claims for denial access to courts against Yaw be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted.

---

[18] The Court notes that while it is unclear whether Plaintiff alleges he actually missed a hearing or if alleges Yaw conveyed a message that Plaintiff refused to attend his hearing to an unspecified person but that no hearing was actually missed, for the purpose of comprehensive review, the Court addresses this allegation as if Plaintiff affirmatively alleged Yaw's deprivation caused him to miss a court proceeding.

### d. *Access to Counsel*

Plaintiff alleges Yaw denied him access to communications with his criminal appellate counsel on several instances, ECF No. 1-1 at PageID 11–13, which this Court construes as alleging a violation of Plaintiff's constitutionally protected right to counsel.

While the Sixth Amendment provides a guarantee of a right to counsel in certain circumstances, "there is no abstract, free standing right to full and unfettered access to contact with legal counsel for post-conviction and civil matters." *Rouse v. Washington*, No. 20-CV-11409, 2021 WL 2434196, at *6 (E.D. Mich. June 15, 2021) (citing *Lewis v. Casey*, 518 U.S., 343, 351 (1996). Denial of the right to telephone or otherwise consult with counsel does not necessarily constitute a constitutional violation. *See Stamper v. Campbell Cnty., Ky.*, 415 F. App'x 678, 680 (6th Cir. 2011). "Courts have rejected claims . . . where prisoners or pretrial detainees have been denied telephone use [to contact counsel] for certain periods of time or where other limitations have been placed on that use, so long as the inmate or detainee had other reasonable means to contact his or her attorney and where no prejudice resulted." *Stamper v. Campbell Cnty., Ky.*, No. CIV A 2007-49 (WOB), 2009 WL 2242410, at *2 (E.D. Ky. July 24, 2009), *aff'd*, 415 F. App'x 678 (6th Cir. 2011) (collecting cases). Moreover, where a prisoner seeks to assert restrictions of access to legal counsel, whether it be in a post-conviction proceeding or in relation to a civil matter, the prisoner must "specifically allege facts that would support a finding that prison officials' conduct inflicted an 'actual injury, i.e., that the conduct hindered the prisoner's efforts to pursue a non-frivolous legal claim." *Rouse*, 2021 WL 2434196 at * 6 (citing *Lewis*, 518 U.S. at 351–353).

Here, the Court need not address whether the Sixth Amendment right to counsel attached at the time Plaintiff alleges the deprivations occurred as Plaintiff fails to allege he could not

communicate with his counsel in any other manner or plead any actual injury or injuries resulting from the restrictions on his access to counsel.

This Court **RECOMMENDS** that all claims for denial of access to counsel against Yaw be **DISMISSED without prejudice** for failure to state a claim on which relief may be granted.

### e. *Eighth Amendment*

In liberally construing the Complaint the Court finds that Plaintiff alleges the following claims which may be brought under the Eighth Amendment: deliberate indifference to medical needs, conditions of confinement, excessive force, and administrative segregation. *See* ECF No. 1-1 at PageID 13–17.

A claim alleging a violation of the Eighth Amendment's prohibition against cruel and unusual punishment has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component requires a court to determine if the pain inflicted was sufficiently serious, requiring a "contextual" investigation responsive to "contemporary standards of decency." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (internal quotations omitted) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. at 103)). The subjective component, which focuses on the state of mind of the official, requires a court to determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (citing *McMillian*, 503 U.S. at 7). However, in instances when prison officials maliciously and sadistically use force to cause harm, the court need not address the objective component as

26

contemporary standards of decency always are violated whether or not significant injury is evident. *Id.* (quoting *McMillian*, 503 U.S. at 9).

### i. Deliberate indifference to medical needs

Plaintiff alleges that he requested medical attention multiple times for pain and marks on his wrists relating to handcuffs being put on too tightly, but his requests were denied or ignored by Yaw[19] and other prison personnel.[20] ECF No. 1-1 at PageID 14. The Court construes Plaintiff's claim as one of deliberate indifference to medical needs in violation of the Eighth Amendment.

Prison officials are forbidden from "'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle*, 429 U.S. at 104). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). The subjective element requires a showing that prison officials have "a sufficiently culpable state of mind in denying medical care." *Id.* (internal citation and quotation omitted).

Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *See Estelle*, 429 U.S. at 103–04. A sufficiently serious medical need is one

---

[19] While the Complaint is not entirely clear as to whether Plaintiff asked Yaw for medical attention or if his request was directed to another MaCI employee, based on Plaintiff's allegation that he told Yaw he was going to file suit against her immediately following his discussion of his wrist injuries, for purposes of initial review the Court interprets his request for medical attention as directed to Yaw. *See* ECF No. 1-1 at PageID 14.

[20] Plaintiff describes a second injury he received in conjunction with the use of mace on him as "burn[s to] [his] skin, penis, [and] testic[les,]" causing him to urinate on himself, and continuing to burn when he attempted to shower later. ECF No. 1-1 at PageID 15. While Plaintiff's description of his mace-related injuries reads more serious in nature than his description of his wrist injuries, he does not allege that he requested or otherwise sought and was denied medical attention or that any prison officials including Yaw, were aware of his mace-related injuries.

"that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).

Serious medical needs have been found when a failure to treat an injury or condition could result in "further significant injury or the unnecessary and wanton infliction of pain." *Ford v. LeMire*, No. 03-CV-10176-BC, 2004 WL 1234137, at \*4 (E.D. Mich. June 1, 2004) (internal quotations omitted) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). Serious medical needs have also been found where a physician made a diagnosis mandating treatment, or where the injury or condition is so obvious that a lay person would "easily" recognize the necessity for a doctor's treatment, and the medical needs require "immediate" attention. *Id.* (citing *Smith v. Franklin County*, 227 F.Supp.2d 667, 677 n. 10 (E.D. Ky. 2002) (citations omitted)). By example, nonobvious and minor injuries including minor cuts and bruises resulting from a glass splinter that required neither stitches nor painkillers have been found to not serious enough to support an Eighth Amendment claim. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 98 (6th Cir. 2004) (collecting cases).

Here, Plaintiff's claim stems from being refused any medical treatment for his wrists, but he does not allege any pain or ongoing medical issues relating to his wrist injuries, nor does his description of his injury indicate it would have been recognizable as requiring medical attention as Plaintiff's entire description of his injuries consist of "marks on my wrists." ECF No. 1-1 at 14. Even when viewing the evidence "in the light most favorable" to Plaintiff, this Court cannot conclude that simply demonstrating that he sustained "marks" on his wrists constitutes a serious medical need. *See Cordell*, 759 F.3d at 581 (quoting *Scott v Harris,* 550 U.S. 372, 380 (2007)).

As Plaintiff has failed to allege a claim regarding his wrist injury which would both meet the objective "serious medical need" standard, and the subjective "culpable state of mind standard" this Court **RECOMMENDS** all claims against Yaw for deliberate indifference to medical needs to be **DISMISSED without prejudice.**

ii.   Conditions of confinement

Plaintiff alleges several incidents which the Court construes as alleging an Eighth Amendment conditions of confinement claim.[21]  The first relates to Yaw's alleged placement of Plaintiff back in his cell following the First Incident, which Plaintiff alleges contained only a mattress and he was wearing only a suicide gown without under clothes underneath it.  ECF No. 1-1 at PageID 14.  The second relates to Plaintiff being returned to his cell following the Second Incident where he was held in allegedly freezing conditions with no mattress and only a single blanket containing mace residue for a week, wearing only a suicide gown with no access to any other clothes, and no access to any basic sanitary necessities such as a toothbrush, toothpaste, or toilet paper.  ECF No. 1-1 at PageID 15.

The Eighth Amendment's prohibition against cruel and unusual punishment is applicable to inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* at 832 (quoting *Palmer*, 468 U.S. at 526–27).  However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the

---

[21] The Court notes that while Plaintiff claims he was put in a dry cell for 24 hours wearing only a suicide gown, without access to a toilet for at least 12 hours by Lieutenant Holten, for the reasons set forth *infra*, when discussing Plaintiff's excessive force claims against Yaw in Section II.C.2.e.iii., the Court shall not address this incident as Plaintiff fails to allege Yaw's involvement in or knowledge of it.

Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Instead, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *McMillian*, 503 U.S. at 9.

For example, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Therefore, to state a claim pursuant to the Eighth Amendment, a plaintiff must allege (1) a deprivation that is objectively "sufficiently serious," for example, that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," and (2) that the defendant prison official has a "sufficiently culpable state of mind," specifically one of "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834 (citations and internal quotations omitted).

Generally, "[t]he circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred." *Boyington v. Walker*, No. 3:18CV-P134-GNS, 2018 WL 3649027, at *3 (W.D. Ky. Aug. 1, 2018) (collecting cases). While temporary inconveniences generally do not demonstrate that conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency required to support a conditions of confinement claim, *see Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001), there is, however, no uniform standard for determining how long before a deprivation is no longer "temporary" or a precise definition of what constitutes a serious deprivation that can be applied to every case.

While "there is a substantial risk of serious harm in the denial of the minimal civilized measure of life's necessities, including adequate food, clothing, shelter, medical care, and reasonable safety," *Barker v. Goodrich*, 649 F.3d 428, 434–35 (6th Cir. 2011) (cleaned up) (quoting *Spencer v. Bouchard,* 449 F.3d 721, 727–28 (6th Cir. 2006) (quoting *Farmer,* 511 U.S. at 834) (internal quotation mark omitted)), even when there are multiple deprivations relating to such items, "short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like" lasting several days "do not rise to the level of a constitutional violation," whereas long term deprivations of the same items may. *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989).

Restraining an inmate in an uncomfortable position, denying access to water, and denying access to the toilet can rise to the level of an Eighth Amendment violation. *Barker v. Goodrich*, 649 F.3d 428 (6th Cir. 2011), relying on *Hope v. Pelzer*, 536 U.S. 730 (2002). "A sufficiently serious deprivation might also be found where an inmate is subjected to a low cell temperature at night, not provided blankets, and deprived of his basic need for warmth." *Satterfield*, 2007 WL 2159296, at *2 (citing *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)). But, where a prisoner alleged he had no access to water, sink, toilet, sheets, or a mattress in a cold cell for "at most two days" the court found the lack of access was for such a short duration that his allegations did not amount to an Eighth Amendment conditions of confinement violation. *Boyington*, 2018 WL 3649027, at *3 (citing *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (finding no Eighth Amendment violation where inmate alleged "no toilet paper, soap, toothpaste, toothbrush, running water, or the ability to shower for six days while on Behavioral Management")).

Courts in this circuit have found that "the Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets," *Abdur-Reheem-X v. McGinnis*, No.

31

99-1075, 1999 WL 1045069, at \*1 (6th Cir. Nov. 12, 1999), nor is the Eighth Amendment implicated when an inmate is deprived of a meal for one night, *Grzelak v. Washington*, No. 1:19-CV-1003, 2020 WL 289229, at \*3 (W.D. Mich. Jan. 21, 2020), or a mattress for two weeks, *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at \*1 (6th Cir. Feb. 15, 1996).  No Eighth Amendment claim has been found due to temporary discomforts resulting from placement in a "dry cell" for 14 days without running water.  *Wiley v. Ky. Dep't of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at \*4 (E.D. Ky. Nov. 21, 2012).  Nor have two several day exposures to cold conditions been long enough to be considered a serious deprivation under the Eighth Amendment.  *Glover v. Grant Cty. Det. Ctr.*, No. 10-00088-DLB, 2010 WL 2804054, at \*4 (E.D. Ky. July 15, 2010); *see also Clark v. Spey*, No. 01-C-9669, 2002 WL 31133198 (N.D. Ill. Sept. 26, 2002) (finding inmate held overnight in cold cell with no toilet did not state a claim).

In relation to the conditions Plaintiff was allegedly subjected to after being returned to his cell following the First Incident, Plaintiff has not demonstrated that a deprivation of access to any personal hygiene items and a mattress for several hours is long enough to be considered a serious deprivation.  Where Plaintiff alleges he was returned to his cell and held for a week in freezing cold while wearing only a suicide gown with no access to clothes, a mattress, or any personal hygiene products including toilet paper, the allegations fall closer to an Eighth Amendment violation.  While the deprivations at issue were temporary as they lasted seven or eight days, courts in this circuit have considered not only the severity of the cold, but the length of time spent in the cold, and whether a plaintiff had any clothing or blankets to "protect" him from the cold temperatures, when determining if being subjected to cold temperatures was sufficiently serious to support an Eighth Amendment claim.  *Satterfield*, 2007 WL 2159296, at \*2.  Taking Plaintiff's allegations as true, as this Court is required to do at this point in the proceedings, *see Denton v.*

*Hernandez*, 504 U.S. 25, 33 (1992) (requiring the court to accept a plaintiff's allegations as true, unless they are clearly irrational or wholly incredible), the combination of the cold temperatures, lack of clothing, mattress, and products essential for sustained personal hygiene constitute allegations of a serious enough deprivation serious enough to survive initial review.

A conditions of confinement claim, however, also "requires a finding of deliberate indifference, that is, 'that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Barker*, 649 F.3d at 434 (quoting *Farmer*, 811 U.S. at 842). Therefore, even if the alleged condition divested Plaintiff of basic essentials of life, he must also establish Yaw's "deliberate indifference" to the conditions in which he was held. *Farmer,* 511 U.S. at 837. A plaintiff need not allege actual knowledge on the part of a defendant, however, as a plaintiff may demonstrate, and a factfinder may conclude, that an official had knowledge of the risk via circumstantial evidence and inference or from the very fact that the risk was obvious. *Barker*, 649 F.3d at 434 (internal quotation mark omitted) (quoting *Bouchard,* 449 at 729 (quoting *Farmer,* 511 U.S. at 842) (internal quotation mark omitted)).

While his allegations do not implicate Yaw as having any role in deciding to hold Plaintiff for a week in his cell following his return in the conditions alleged, from September 9, 2022, through September 15, 2022, it is not beyond reason to find that the conditions in which Plaintiff was held were obvious to prison staff including Yaw. Plaintiff alleges that Yaw was a supervisor responsible for Yaw's area, that all of Plaintiff's complaints were to pass though Yaw, and that he met with Yaw on September 12, 2022, during the week of confinement at issue. *See* ECF No. 1-1 at 15–16. The Court may infer from Plaintiff's allegations that Yaw, having been involved in restraining Plaintiff in the First Incident, her supervisory capacity, and her presence at the facility during the week in question, would have learned of the Second Incident, Plaintiff's dry cell

confinement, and would be aware of the conditions of Plaintiff's confinement when he returned to his cell for seven days following release from the dry cell.  These facts and inferences, taken as true, are sufficient to state an Eighth Amendment conditions of confinement claim against Yaw relating to the week of September 9, 2022, through September 15, 2022.

Based upon the above, the Court concludes that Plaintiff has stated an Eighth Amendment conditions of confinement claim against Yaw.[22]  The Court **RECOMMENDS** that only the Eighth Amendment conditions of confinement claim against Yaw relating to the to the conditions of Plaintiff's confinement for the week of September 9, 2022, through September 15, 2022, be allowed to proceed and that all other conditions of confinement claims against Yaw be **DISMISSED without prejudice** for failure to state a claim.

### iii. Excessive force

Plaintiff alleges two instances the Court construes as claims of excessive force: being handcuffed in relation to the First Incident, and the use of mace in relation to the Second Incident. For the reasons set forth below, the Court finds that neither meets the requirements for stating an excessive force claim under the Eighth Amendment.

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners . . . and must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S at 832 (citations and internal quotation marks omitted).  A prisoner may only claim the right to be free from punishment "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

---

[22] The Court only concludes Plaintiff has met the pleading standard for stating this claim and expresses no opinion on its merits at this time.

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers,* 475 U.S. 312 (1986), should be applied.  *McMillian,* 503 U.S. at 6–7.  Under *Whitley,* the main judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson,* 503 U.S. at 6–7 (citing *Whitley,* 475 U.S. at 320–21).  In determining whether force was applied in a malicious or sadistic manner, the Court should consider factors such as (1) the need for application of the force, (2) the amount of force used, (3) the extent of injury inflicted, (4) the threat to the safety of staff and inmates reasonably perceived by the prison official, and (5) any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley,* 475 U.S. at 321).

In relation to both the First and Second Incidents, Plaintiff admits force was used to bring him into compliance after he had boarded up his cell and refused to cooperate with prison staff. *See* ECF No. 1-1 at PageID 13–15.  However, Plaintiff does not elaborate on his own behavior during either incident prior to the use of force or the level of disturbance he caused,[23] rendering it impossible to determine the level of threat and safety to prison staff and/or other inmates.

In relation to the First Incident, while allegations of prison personnel refusing to loosen tight handcuffs have been found to establish the malicious or sadistic application of force element, the circumstances were far different, and the injuries were far more serious than Plaintiff's allegations here.  *See Pewitte v. Haycraft*, No. 3-13-0484, 2015 WL 5038026, at *5 (M.D. Tenn. Aug. 25, 2015) (prisoner was a diabetic, the tightness of the handcuffs caused ulcerations and "purulent discharge" from her wrists, and there was nothing in the record to suggest the prisoner's behavior was a threat to officer safety at the time she was handcuffed though their removal several

---

[23] Of note, from a review of the Compliant and Plaintiff's allegations that he was placed in a "suicide gown" despite his protestations that he was not suicidal, the Court infers that Plaintiff's behavior prior to being handcuffed likely caused a disturbance in his cell and the surrounding areas.  *See* ECF No. 1-1 at PageID 13–14.

hours later). Here, Plaintiff admits he was noncompliant with prison officials resulting in his handcuffing, and he alleges no facts that would establish his wrist injuries were anything more than minor.

In relation to the use of mace in the Second Incident, "the Sixth Circuit has held that there is no Eighth Amendment violation where a prisoner was sprayed with pepper spray after repeatedly disobeying orders, and in numerous cases concluded that the use of chemical agents against recalcitrant prisoners did not violate the Eighth Amendment." *Batson v. Hoover*, 355 F. Supp. 3d 604, 614 (E.D. Mich. 2018), *aff'd* 788 F. App'x 1017 (6th Cir. 2019) (cleaned up) (citing *Roberson*, 770 F.3d at 406 (citing *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases) (quotations omitted)). Applying Plaintiff's version of the facts, clearly mace was used only after he boarded up his cell and then refused to communicate or otherwise comply with prison officials. *See* ECF No. 1-1 at PageID 14–15. Furthermore, Plaintiff does not establish that Yaw had the requisite culpable state of mind as he does not allege she was present, aware of, or in command over the officers involved in the Second Incident. *See* ECF No. 1-1 at PageID 14–15 (alleging he "boarded up" his cell while Lt. Holten was in command, that "Nurse Raypool authorized for mace to be used on [him]" and that Officer Bretz to TPU recorded the mace incident and that "N. Bennett" was also present).

The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability upon supervisory personnel; rather, in order to find a supervisor liable, a plaintiff must allege that he condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Taylor v. Michigan Dep't of Corr.,* 69 F.3d 76, 80–81 (6th Cir.1995). As Plaintiff's only allegation that Yaw is liable for the Second Incident was a general allegation that his protests were in response to Yaw's alleged violations of prison policy and his other unnamed rights, *see id.* at PageID 11 (alleging his protests

and subsequent punishments were made "in the process of the violations of Lieutenant Yaw"), and as there is no allegation or indication in the Complaint that Yaw had supervisory authority over the lieutenant who was in command of the second shift at the time the Second Incident occurred or any of the other officers present, any attempt at implicating Yaw as liable for the Second Incident should fail. The Court therefore **RECOMMENDS** any Eighth Amendment claim against Yaw—either for her personal involvement or for the actions of the officers allegedly involved in the Second Incident under a *respondeat superior* theory—should be **DISMISSED without prejudice** for failure to state a claim.

### iv. *Administrative segregation*

Being placed in segregation is "a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, [and] is insufficient to support an Eighth Amendment claim." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citing *McMillian,* 503 U.S. at 9).

To the extent Plaintiff claims that his segregation to the cool off block for several hours relating to the First Incident was excessive and in violation of the Eighth Amendment, ECF No. 1-1 at PageID 13 (alleging Yaw "over punished" him), his claim must fail.[24]

The Court therefore **RECOMMENDS** any Eighth Amendment claim against Yaw related to Plaintiff's placement in administrative segregation be **DISMISSED without prejudice** for failure to state a claim.

---

[24] As stated previously, the Court need not address the 24-hour segregation relating to the Second Incident as discussed *supra*, Plaintiff failed to establish Yaw was aware of or otherwise responsible for that event.

### III.     CONCLUSION

#### A.     Order On Plaintiff's Motion for Reconsideration of the Order graining Plaintiff's IFP Motion

Plaintiff's motion for reconsideration of this Court's prior Order granting Plaintiff's IFP Motion and setting a filing fee payment schedule, ECF No. 6, is **DENIED without prejudice**. The Order granting Plaintiff's IFP Motion, ECF No. 2, remains effective and controls the fee payment schedule.

#### B.     Report And Recommendations Following Initial Review

Having conducted the initial screen required by law, **IT IS THEREFORE RECOMMENDED THAT:** The following claims set forth in Plaintiff's Complaint be **DISMISSED with prejudice:** (1) all requests for relief that Yaw be disciplined; and (2) all claims against Yaw in her official capacity. The Court further **RECOMMENDS** that only the Eighth Amendment conditions of confinement claim against Yaw relating to the to the conditions of Plaintiff's confinement for the week of September 9, 2022, through September 15, 2022, be allowed to proceed and that all other claims against Yaw in her individual capacity be **DISMISSED without prejudice** for failure to state a claim.

As Plaintiff has provided the requisite forms for service of process, *see* ECF Nos. 1-3 and 1-4, the Court will order service of process on Defendant if appropriate once the Court considers this Report and Recommendation and any objections to it. Plaintiff is **ADVISED** that he must keep this Court informed of his current address, and promptly file a Notice of New Address if he is released or transferred.

The Court further **RECOMMENDS** that the District Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and

Recommendations would not be taken in good faith, and consequently, leave for Plaintiff to appeal *in forma pauperis* should be denied.

<u>**Procedure on Objections to Report and Recommendation**</u>

If any party objects to this Report and Recommendation, that party may, **<u>within fourteen (14) days</u>** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


**IT IS SO ORDERED AND RECOMMENDED.**


Date:  April 7, 2023                                    /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE